UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTY DELAPO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-4012 |
| | ) | |
| CITY OF MOLINE, Moline Police Officers | ) | Judge James E. Shadid |
| J. SCHUMACHER, Badge 2042, J. | ) | |
| DOBOSZ, Badge 2129, and B. TUTTLE, | ) | |
| Badge 2146, | ) | |
| | ) | |
| Defendants. | ) | Magistrate Jonathan E. Hawley |

## ORDER AND OPINION

Now before the Court is a Motion for Summary Judgment by All Defendants (Doc. 20). For the reasons set forth below, Defendants' Motion (Doc. 20) is GRANTED in part and DENIED in part.

### BACKGROUND

The Plaintiff, Christy Delapo, is a resident of Moline, Illinois. She is suing the City of Moline and three individual police officers (Officers Schumacher, Tuttle, and Dobosz) for unreasonable seizure, excessive force, failure to intervene, and civil conspiracy under 42 U.S.C. § 1983, as well as for malicious prosecution under Illinois law. Counts VII and VIII of the complaint demand recovery from the City of Moline for the foregoing claims on the basis of Illinois law. All Defendants have moved for summary judgment.

The following facts are undisputed among the parties. On June 29, 2016, Officers Schumacher, Tuttle, and Dobosz responded to a 911 call alleging that a woman had used a bat to hit the doors and windows of the caller. When they arrived, they spoke with the caller and several witnesses. The officers were directed across the yard to the residence of the Plaintiff, Christy Delapo. Officer Schumacher saw Delapo on her porch and asked her if she could step

1

outside and answer some questions about the events of that day involving her neighbors. She agreed, came down the steps from the porch, and spoke with the officers for some time about what had happened. After being interrupted by the officers several times, Delapo said, "it doesn't seem like you're interested in what I have to say or what happened, so we are through. I'm done." There was a long pause during which no one spoke, and Delapo turned around to walk up the steps back into her home.

At that point, Officer Schumacher said, "no, you don't," grabbed the back of Delapo's shirt, and yanked her backward. She fell face-first into the dirt, landing with her left palm pressed between her chest and the ground. Officer Schumacher grabbed Delapo's left arm between the bicep and the inner elbow, and he pulled it from under her body, twisting it behind her back. At some point during this encounter, Delapo felt a sharp pain in her wrist. She did not resist during this time. Officer Tuttle put her right arm behind her back while Officer Schumacher handcuffed her. Officer Dobosz had a knee on Delapo's back while she was on the ground. Following the handcuffing, Delapo said something was wrong with her wrist. Officer Schumacher replied that handcuffs are not supposed to be comfortable. They transported her to the Rock Island jail.

At the jail, a deputy removing Delapo's handcuffs noticed that her wrist was injured. The deputy told Officer Schumacher, "oh my God, you need to see this." Delapo's left wrist was noticeably deformed. Officer Schumacher saw the injury, brought Delapo's hands in front of her, and handcuffed her again. He brought her to the hospital, where medical staff determined that her wrist was fractured. It eventually required surgery, and Delapo now has limitations in the motion of her wrist.

Many facts remain disputed among the parties, particularly with regard to the malicious prosecution claim. According to Officer Schumacher, Delapo was arrested for aggravated battery with a deadly weapon. Delapo claims she was charged with resisting arrest. The Defendants maintain that no criminal proceedings ever commenced against Delapo. She maintains that she was charged with resisting arrest, showed up to court with an attorney, and that the charges were later dropped. The Defendants now move for summary judgment on all counts.

## LEGAL STANDARD

Summary judgment is proper where the materials in the record demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The role of the judge in resolving a motion for summary judgment is not to weigh the evidence for its truth but to determine whether sufficient evidence exists that a jury could return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Thus, in order to survive a motion for summary judgment, the non-movant must show specific facts that demonstrate the existence of genuine issues for trial. *Id.* The Court will construe the record "in the light most favorable to the non-movant" in deciding whether the case involves genuine issues of fact requiring a trial. *Payne v. Pauley*, 337 F.2d 767, 770 (7th Cir. 2003). However, mere allegations in the complaint by a non-movant plaintiff will not suffice; instead, they must show admissible evidence such as depositions that show genuine disputes of material fact. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

## DISCUSSION

The Defendants' motion for summary judgment is based on six arguments: 1. there was no unlawful seizure because the officers had probable cause to arrest the Plaintiff for aggravated battery; 2. the officers used only reasonable force in arresting Delapo and in handcuffing her on

the way to the hospital; 3. there was no realistic opportunity for Officers Tuttle and Dobosz to intervene and prevent Officer Schumacher from using force during the arrest; 4. all officers are entitled to qualified immunity with regard to the unlawful seizure and excessive force claims; 5. there is no evidence to support the Plaintiff's claim of civil conspiracy; and 6. the Plaintiff cannot succeed on a malicious prosecution claim because there is no evidence of the initiation of charges against her.

As a preliminary matter, there are two undisputed aspects of the Defendants' motion. One is that there is insufficient evidence to support the conspiracy claim. In response to the Defendants' motion, the Plaintiff has declared that she will voluntarily withdraw Count V of her complaint, which was a claim of civil conspiracy under 42 U.S.C. § 1983. As such, this Court need not address that claim. The other undisputed aspect of the Defendants' motion involves Count I of the Plaintiff's complaint, which is a claim of an unreasonable seizure under 42 U.S.C. § 1983. In the complaint, the Plaintiff contended that Officer Schumacher violated the Fourth Amendment (as guaranteed by the Fourteenth Amendment) by seizing her without reasonable suspicion or any other legal justification. The Defendants argued, and the Plaintiff did not contest, that at the time of her arrest, there was probable cause for the officers to believe she had committed aggravated battery. In her reply brief, the Plaintiff claimed that the unreasonable seizure claim was premised on the *nature* in which seizure was carried out rather than the *basis* for the seizure, but Count I of her complaint clearly states that "[t]he seizure of Plaintiff without reasonable suspicion or any other legal justification violated her Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures." Doc. 1, Count I, ¶ 60. Because she now concedes that there was probable cause for her arrest, there is no

4

genuine dispute of fact regarding this claim. Accordingly, the Court grants the Defendants' motion for summary judgment with respect to Count I of the complaint.

However, the remainder of the Defendants' motion presents issues involving disputed material facts. The record shows conflicting information regarding the use of excessive force at the initial arrest, the use of excessive force when Delapo was handcuffed a second time, the officers' entitlement to qualified immunity, whether Officers Dobosz and Tuttle failed to intervene, and whether there are sufficient grounds for a claim of malicious prosecution. As discussed below, summary judgment on any of those issues is inappropriate at this time.

*(1) Excessive Force in the Initial Arrest*

When evaluating excessive use of force by law enforcement officers effectuating arrests, the finder of fact must evaluate the officers' "objective reasonableness" using a totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Payne*, 337 F.2d at 778. A number of factors must be weighed in considering whether the force used was permissible, including the nature of the crime in question and whether the suspect posed a risk of violence or flight from the arrest. *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). Courts must examine an officer's behavior from the perspective of a reasonable officer on the scene at the time, rather than with the benefit of hindsight. *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017) (quoting *Graham*, 490 U.S. at 396–97).

Both parties agree that Officer Schumacher had probable cause to seize Delapo based on the statements of her neighbors for aggravated battery, and the Defendants correctly note that such a crime is very serious. Much of the remaining circumstances, however, are disputed among the parties. Delapo and Officer Schumacher disagree about the precise moment that the injury occurred; Delapo claims that it was when Officer Schumacher twisted it behind her back (Doc.

22, p. 10), and Schumacher claims it was when Delap's arm was still beneath her, during the fall (Doc. 20, p. 12). Furthermore, Delapo contends that she was cooperative, compliant, and unaware that she was not free to leave when she turned to reenter her home. Doc. 22, pp. 4, 7. Viewing the evidence in the light most favorable to Delapo, a reasonable finder of fact could determine that a woman who believed her conversation with police had ended, turned around to go back inside her house, and had no idea that she was under arrest, did not pose a risk of any injury nor of flight to evade arrest. Thus, Officer Schumacher's decision to grab her by the shirt, pull her to the ground, and yank and twist her arm behind her back might be found objectively unreasonable, depending on how the finder of fact weighs the disputed material on the record.

*(2) Whether Officer Schumacher Used Excessive Force in the Second Handcuffing*

Officers may not "knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback v. Dixon*, 568 F.3d 767, 772 (7th Cir. 2009) (quoting *Herzog v. Vill. of Winnetka, Ill.*, 309 F.3d 1041, 1043 (7th Cir. 2002)). An officer's knowledge that an action will inflict unnecessary pain will depend on the circumstances, but in some cases, "the fact that an act will cause pain or injury will be clear from the nature of the act itself." *Id.* at 772 (quoting *Payne*, 337 F.3d at 779). The Defendants claim that there is no evidence of the needless infliction of pain on this record, and that they are thus entitled to summary judgment regarding the use of handcuffs on Delapo after officers realized her wrist was seriously injured. Doc. 23, p. 14. The Plaintiff points to a recording of Delapo screaming and crying at the station while her handcuffs were removed and reapplied, depositions by Delapo and Officer Schumacher that she had complained of her wrist pain, and the undisputed fact that Officer Schumacher had seen her visibly deformed wrist and had decided to take her to the hospital when he reapplied the handcuffs to her wrists. Doc. 22,

6

pp. 12–13. Viewing the record in the light most favorable to the Plaintiff, this Court cannot conclude that there is no dispute of material fact with regard to this claim.

*(3) Qualified Immunity*

Law enforcement officials, among others, are protected from liability for their official actions so long as those actions comply with well-established constitutional and statutory rights. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The Defendants claim that the Plaintiff has not cited any authority showing that Schumacher was on notice that his conduct was unconstitutional. Doc. 20, p. 17. The Plaintiff claims that Schumacher was indeed on notice because of cases such as *Rabin v. Flynn*, 725 F.3d 628, 636 (7th Cir. 2013) and *Butts v. Smiles*, 16-CV-1135 (C.D. Ill. March 27, 2018), where officers knowing of circumstances that would make handcuff use painful to the arrestee decided to use them anyway. Doc. 22, p. 15. The Defendants contend that those circumstances are not sufficiently identical to those here in order to "squarely govern" Schumacher's conduct, but if the facts are viewed in the light most favorable to the Plaintiff, this is not the case; here, as in *Butts*, an officer had notice of substantial injuries on the wrists of an arrestee, decided to place handcuffs on the arrestee anyway, and ignored declarations of pain. Doc. 22, pp. 13–14. The Defendants disagree with the Plaintiff's account of the evidence, and their depositions contradict one another. This is a matter of factual dispute to be resolved at trial, not summary judgment.

*(4) Failure to Intervene*

The Defendants claim that the Plaintiff has not put any evidence forth that Officers Tuttle or Dobosz had a realistic opportunity to prevent a constitutional violation by Officer Schumacher. The Seventh Circuit has established that the issue of opportunity to intervene "is generally an issue for the trier of fact." *Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir.

2005). Here, the record does indicate that both officers were physically on top of Delapo at the moment Schumacher pulled her arm behind her back. The record also indicates that no officer specifically recalled checking her handcuffs for fit or injury, despite a prevailing practice of doing so. Whether Officer Schumacher's actions constituted excessive force, and whether the other two officers could have intervened and prevented the damage, are both disputed factual issues inappropriate to be decided on summary judgment.

*(5) Malicious Prosecution*

Under Illinois law, in order to prevail on a claim of malicious prosecution, the plaintiff must demonstrate five elements: 1. the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; 2. termination of the proceeding in favor of the plaintiff; 3. the absence of probable cause; 4. malice; and 5. damages. See *Swick v. Liautaud*, 169 Ill.2d 504, 512 (1996). The Defendants argue that the Plaintiff cannot show the first of those elements: the commencement of a criminal proceeding by the defendant. Doc. 20, p. 20. Their argument rests on the legal premise that none of the Defendants personally signed an information initiating a criminal proceeding against Delapo, and thus that only the charging entity (the State's Attorney) could be the defendant in a malicious prosecution action. This is an incorrect statement of law. One can "initiate" a criminal proceeding in Illinois by participating actively and positively in producing a charge, such as a civilian giving information he knows to be false to a police officer in order to set off a criminal prosecution against someone he knows to be innocent. *See, e.g., Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578 (1986) ("[T]he attribution of police action to a defendant requires that the defendant requested, directed or pressured an officer into swearing out a complaint for plaintiff's arrest, or that defendants knowingly gave false information to the police.") (citing *Geisberger v. Vella*, 62 Ill. App. 3d 941 (1978)); *Beaman v.*

8

*Freesmeyer*, 2017 Ill. App. 4th 160527 ("Liability for malicious criminal prosecution is not confined to situations where the defendant signed a complaint against the plaintiff. Rather, liability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all elements of the tort are met.") (quoting *Frye v. O'Neill*, 166 Ill. App. 3d 963, 975 (1988)).

Here, the Plaintiff has alleged that all three officers caused the commencement of a wrongful criminal proceeding against her by filing official written reports that contained false information. The record includes evidence to support her claim, including a deposition where an officer admits that their official report claimed the Plaintiff never screamed or complained of any pain. If the Plaintiff's version of the facts were weighed more heavily than the Defendants' version, the Plaintiff would prevail. Because material facts remain disputed on the Plaintiff's claim of malicious prosecution, the Defendants are not entitled to summary judgment on that ground.

**CONCLUSION**

A reasonable finder of fact could find in Plaintiff's favor with regard to her claims of excessive force, failure to intervene, malicious prosecution, and her claim that qualified immunity will not apply to the Defendants. The Defendant's motion for summary judgment on Counts II, III, IV, and VI is therefore denied. The Plaintiff has agreed to voluntarily withdraw her claim of civil conspiracy, so the court will not rule on the motion for summary judgment on Count V. The Plaintiff does not contest that there was probable cause to arrest her. Thus, the Defendant's motion for summary judgment is granted with respect to the Plaintiff's claim that there was no legal justification to seize her, which is Count I in the complaint. The Plaintiff's

state law *respondeat superior* claim and indemnification claim (Counts VII and VIII) remain, as they were not addressed by the Defendants' motion for summary judgment.

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 20) is GRANTED in part and DENIED in part.

Signed on this 27th day of August, 2018.

/s James E. Shadid
James E. Shadid
Chief United States District Judge